IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DONNA C.,<br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | Case No. 1:21-cv-01219-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Donna C. filed an application for disability insurance benefits (DIB) on March 7, 2019, alleging disability beginning on January 1, 2019. Her DIB claim was denied initially on August 19, 2019 and upon reconsideration on December 10, 2019. After a request for hearing before an administrative law judge, a hearing was held on November 5, 2020 before the Honorable David R. Bruce (ALJ). At the hearing, Donna was represented by an attorney, and Donna and a vocational expert (VE) testified. Following the hearing, Donna's DIB claim was denied on

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 9) on the docket.

November 25, 2020.  Her request for review by the Appeals Council was denied on June 3, 2021, making the ALJ's Decision the final decision of the Commissioner. Donna timely filed the instant civil action seeking review of the ALJ's Decision on August 6, 2021.

II

Donna challenges the ALJ's Decision for the following reasons:  1) the ALJ failed to build a logical bridge to the conclusion Donna performed substantial gainful activity prior to the alleged onset date of her disability and could again return to that work; 2) the presiding ALJ was improperly appointed pursuant to the Appointments Clause of the United States Constitution and therefore lacked legal authority to decide Donna's case as Ms. Berryhill exceeded the allowed tenure of the Federal Vacancies Reform Act at the time she purportedly ratified the ALJ's appointment; 3) the ALJ erroneously played doctor rather than evaluate Dr. Matheis-Soliman's opinions pursuant to the regulations; 4) the ALJ failed to adequately confront Donna's gastrointestinal symptoms or her need for frequent bathroom breaks in light of the narrative requirements of SSR 96-8p and the credibility requirements of SSR 16-3p; and 5) the credibility assessment was patently wrong.

III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the

ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Donna claims error on the ALJ's part at Step Four in addition to challenging the ALJ's appointment.

## A

At Step One, the ALJ determined Donna had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date. AR 15. At Step Two, the ALJ determined Donna had the following severe impairments: fibromyalgia; degenerative disc disease, cervical spine; mild obesity; irritable bowel syndrome; obstructive sleep apnea; hyperlipidemia; and hypertension. *Id.* At Step Three, the ALJ determined Donna did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 16. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: frequent climbing ramps and stairs, but never ladders, ropes, and scaffolds; frequent balancing; [sic] stooping, kneeling, and crouching;

4

occasional crawling; no work at unprotected heights, around moving mechanical parts, or operating a motor vehicle; work performed with ready access to a restroom.

AR 16-17. The ALJ determined that Donna was capable of performing her past relevant work as "branch manager" as it is generally performed[2] (sedentary exertional level) per the Dictionary of Occupational Titles. AR 21. In making that finding, the ALJ explained that the VE testified a hypothetical individual with Donna's age, education, work experience, and RFC could perform Donna's past relevant work. *Id*. Accordingly, the ALJ determined Donna had not been under a disability from January 1, 2019 through the date of the Decision. *Id*.

**B**

Donna argues that the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion that Donna engaged in substantial gainful activity prior to the alleged onset and had the ability to return to her prior and only relevant job given the special conditions she required to sustain that prior position for as long as she did. The Commissioner argues that Donna conflates the standard at Step Four of the sequential evaluation with the standard at Step Five, and the ALJ conservatively determined Donna could not go back to her old job, but that she had failed to prove she would be unable to earn substantially gainful income by using her expertise to perform the job elsewhere at the sedentary exertional level.

The ALJ quite clearly articulated his reasons for finding as he did with regard to Donna's RFC. At one point, the ALJ explained:

> While the claimant alleges onset of disability in January 2019, she has reported suffering from fibromyalgia for approximately fifteen years [ ]. Indeed, a year prior to the alleged onset date she was reporting constant headaches and extreme, eight out of ten, pain [ ]. She

---

[2] The ALJ noted that Donna actually performed her past work at the light exertional level. AR 21.

continued working with these symptoms for a year thereafter, earning $61,957.22 in 2018 [ ]. The claimant's ability to work despite her longstanding fibromyalgia symptoms and other symptoms indicate that these symptoms are either not as severe as she has alleged and do not limit her ability to perform basic work activities to the degree she claims. This evidence supports the ultimate conclusion of this decision that the claimant could perform her past relevant work and is therefore not disabled.

AR 17-18. Later, in his consideration of Donna's diverticulitis, the ALJ rejected that she was as limited by it as she alleged where, "Indeed, the claimant has dealt with these gastrointestinal issues for many years, with treatment as much as ten years ago and has been able to work despite these issues [ ]." AR 18. Also, in support of his conclusion that the limitations he assessed accounted for medical professionals' opinions and Donna's subjective allegations to the extent each found support in the overall record, the ALJ stated, "The claimant's symptoms are related to longstanding impairments for which the claimant has received conservative treatment while she was engaged in substantial gainful activity and since the alleged onset date." AR 20-21. Because the ALJ so obviously relied, in part, on the fact that Donna continued to work "despite" her symptoms in support of his RFC finding, his failure to consider the special conditions under which Donna did so in more recent years was a glaring omission. 20 C.F.R. § 404.1573(c) provides, in relevant part:

> The work you are doing may be done under special conditions that take into account your impairment . . . If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.

Special conditions include, but are not limited to, that the claimant required and received special assistance from other employees in performing her work, that she was allowed to work irregular hours or take frequent breaks, or that the claimant was given the opportunity to work despite her impairment because of past association with her employer or her employer's concern for her welfare. 20 C.F.R. § 404.1573(c)(1), (2), and (6).

Evidence of record included Donna's testimony regarding her work as a branch manager at a bank. She said that while her job included lifting greater than 10 pounds, she worked up to the point where she avoided it and if needed, she asked someone to help her. In at least the last two years of her working, Donna did not lift more than 20 pounds. In response to the ALJ's question of why January 1, 2019 was the date Donna alleged she could no longer work, Donna answered:

> I had worked with my employers who were very understanding and good for a few years before that – that probably was a year before – on how to resolve my ability to not do what I used to. We adjusted. They suggested I take a leave of absence to work on my health or see my doctor or try and get to more of a level. I did that. They allowed me to come back part time to work up to full-time hours, if possible, with the hope that I could. And so for at least a year previous to 2019, I worked lesser hours and even doing that I found myself going in the other direction, of struggling to even work those hours. So, I – I – it just – even the limited hours I was working, I was crumbling.

AR 55-56. To the extent the ALJ contrasted Donna's past work with her subjective symptoms to assess the supported extent of the intensity, persistence, and limiting effects of those symptoms, it was that much more important for the ALJ to expressly confront the foregoing testimony.

The record also included documentation from Donna's previous employer, First State Bank, dated August 15, 2017 which confirmed that the Bank approved Donna's leave of absence pursuant to the Family and Medical Leave Act (FMLA)

7

in 2017. AR 281. In a September 13, 2017 email to Donna, the Bank's senior vice president wrote: "It is understandable to come back part-time and see how you do. If you think these hours will work for you that if [sic] fine with me. If you feel after you get here that you need to adjust them that is fine also." AR 285. In an April 19, 2018 letter, the Bank summarized items that were discussed with Donna at a meeting that day, including that she felt reduced hours of 15-19 hours per week "seems to be working well," that it was left up to her to "test the waters" and perhaps try to adjust her hours upward, that she would keep her full-time status and continue with the hours that worked for her as a reasonable accommodation under the ADA, and the Bank and she would meet again in three months to touch on the letter's bullet items. AR 283-84. 2018 Bank documentation indicated that Donna used 20 vacation days and 220 sick hours as well as FMLA leave from July to October 2018. AR 297-99. A medical record dated August 26, 2019 includes Donna's representation that "for a long time [she] was able to just manage her fibromyalgia pain but she is now having more pain symptoms and has been missing work." AR 637. The ALJ made no mention of this evidence in his Decision.

In failing to consider the particular conditions under which Donna worked – evidence of which appeared in the record (see *supra*) – the Court cannot be assured that the ALJ considered the important evidence. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure [the reviewing court] that the ALJ considered the important evidence . . . and to enable [the reviewing court] to trace the path of the ALJ's reasoning"). 20 C.F.R. § 404.1573 removes any doubt that evidence a claimant worked under special conditions is important evidence. The ALJ's failure is especially problematic where Donna's perceived ability to perform her past relevant work was claim-dispositive. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("At the

fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled"); ALJ's Decision AR 21 (finding Donna not under a disability where she was capable of performing her past relevant work as a "branch manager" of a bank). The ALJ formulated an RFC and presented it to the VE who testified that someone with that RFC could perform Donna's past relevant work. *See* SSR 82-62 at *3 ("The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision").

Apparently in response to Donna's argument that her special conditions included reduced hours, the Commissioner contends that there is no requirement that substantially gainful activity be performed on a full-time basis. Dft's MSA (Doc. 17 at pg. 26). The Commissioner is correct but ignores the fact that the ALJ did not consider whether those reduced hours in and of themselves were special conditions such that Donna's "part-time" could not be considered substantial gainful activity. *See* 20 C.F.R. § 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before"). The ALJ considered Donna's reduced hours only in the context of the persuasiveness (or not) of providers' letters of restriction. The ALJ did not consider evidence of the special conditions (including reduced hours) under which Donna performed her past work in 2017 and 2018 in the context of his substantial gainful activity finding. That failure taints his SGA finding which, in turn, taints his past relevant work finding. *See Dugan v. Sullivan*, 957 F.2d 1384, 1390 (7th Cir. 1992) ("income guidelines in the regulations create only a presumption, and they do not relieve

an ALJ of the duty to develop the record fully and fairly"); *and* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" as "work that you have done within the past 15 years, *that was substantial gainful activity*, and that lasted long enough for you to learn to do it") (emphasis added). In any event, the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (going on to say that was "especially true when, as here, the claimant's employer is accommodating him"); *see also Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) (noting that there is a significant difference between being able to work a few hours a week and having the capacity to work full time and observing that the claimant was able to work for her employer part-time "only because he was a friend who tolerated frequent breaks and absences that an ordinary employer would have found unacceptable").

As for the Commissioner's argument that the ALJ had no burden of proving that Donna could work full time with her impairments, the ALJ *did* have the obligation to consider all the relevant evidence and to not ignore contrary evidence. *See Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (stating the problem was not that the ALJ weighed the evidence in a certain way, but rather that "she cited only evidence favorable to her decision without discussing any contrary evidence"). True, "work done under special conditions may show that [a claimant has] the necessary skills and ability to work at the substantial gainful activity level," but fatal here is that the ALJ made the point blank statement that Donna's past work was substantial gainful activity without confronting the evidence that she did that past work under special conditions. 20 C.F.R. § 404.1573(c). As Donna argues, the ALJ's conclusion as to her ability to work at the level of substantial gainful activity was not the product of an accurate and logical bridge. *See Purvis v. Berryhill*, No. 15-cv-11580, 2017 WL 1022014, at *10 (N.D. Ill. Mar. 16, 2017)

10

(finding problematic that because there was no discussion of issues pertaining to the claimant's past relevant work, there was "no 'logical bridge' for this Court to traverse between the record evidence and the ALJ's conclusion").

## C

Because the Court has determined the ALJ committed error that warrants remand, the Court need not address Donna's four remaining arguments.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 16) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on December 12, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE